IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARVIN RANDALL,

Petitioner,

v.

ERIN REYES,[1]

Respondent.

Case No. 2:23-cv-01826-SB

**FINDINGS AND RECOMMENDATION**

**BECKERMAN, U.S. Magistrate Judge.**

Petitioner Marvin Randall ("Randall"), an individual in custody at Two Rivers

Correctional Institution at the time of filing, filed this habeas corpus proceeding pursuant to 28

U.S.C. § 2254 ("Section 2254"). Because Randall's claims are not cognizable, are procedurally

defaulted, or were denied in a state-court decision that is entitled to deference, the Court

---

[1] Randall was released from prison in July 2025 and is currently subject to post-prison supervision ("PPS") in Washington County. (ECF Nos. 69-72.) Accordingly, the individual who has day-to-day control of Randall on PPS must be substituted as respondent for Erin Reyes under Fed. R. Civ. P. 43(c)(1) and Rule 2(a) of the Rules Governing Section 2254 Cases, 28 U.S.C. foll. § 2254.

recommends that the district judge deny the Second Amended Petition for Writ of Habeas Corpus (ECF No. 14) and deny a certificate of appealability.

## BACKGROUND

On August 21, 2019, a Washington County grand jury returned an indictment charging Randall with four counts of Compelling Prostitution and two counts of Promoting Prostitution. (Resp't Ex. 101, Exs. Ans., ECF No. 39.) The charges arose in connection with Randall's efforts to facilitate the prostitution of a minor victim, "KG," in the Portland metropolitan area in 2018. (*Id.*) Randall pleaded not guilty to all charges, waived his right to a jury, and proceeded to a bench trial in January 2021. (Resp't Ex. 103 at 60-62.[2])

## I.    TRIAL COURT PROCEEDINGS

### A.    The State's Evidence

KG's mother, Jill Fisher ("Fisher"), worked for Randall as an escort in Southern California approximately twenty years before the events leading to Randall's arrest. (*Id.* at 351-52.) Randall posted advertisements for Fisher's services on an "escort-related website" called Backpage, and Fisher went on "dates" with clients and engaged in sexual activity for money. (*Id.* at 88, 354-55.) Randall eventually left the escort business but remained friendly with and occasionally helped Fisher, who continued to engage in prostitution "on and off" for the next twenty years. (*Id.* at 302, 354-56.)

In early 2018, Fisher, her boyfriend, Donald Davies ("Davies"), and KG lived in an apartment in Beaverton, Oregon. (*Id.* at 304, 360.) Davies worked in construction, Fisher drove for ridesharing services, and seventeen-year-old KG used a website called "Sugardaddies" to

---

[2] When citing Respondent's Exhibits, the Court uses the exhibit page numbers located in the lower right corner of each exhibit.

share photographs of herself for money. (*Id.* at 305-06, 361-62.) Fisher had recently relapsed on methamphetamine, which she shared with Davies and KG. (*Id.* at 305, 360-61.) The family struggled to make ends meet. (*Id.* at 306, 362.)

To help ease the family's financial difficulties, KG agreed to engage in prostitution. (*Id.* at 303, 305-07.) Because Fisher did not know how to post advertisements online, she contacted Randall and asked if he would post the advertisements for KG. (*Id.* at 363-64.) Randall agreed and posted several advertisements directed toward potential clients in the Portland metropolitan area on Backpage and similar websites. (*Id.* at 365-373, 513.) The advertisements featured explicit photos of KG, listed her services, and directed interested parties to call a phone number belonging to Fisher. (*Id.* at 111-12, 373-74, 378-79.) Although Randall worked closely with Fisher to create and post KG's advertisements, he did so from a location outside of Oregon.[3] (*Id.* at 310, 364-74.)

The advertisements were successful. (*Id.* at 378.) Fisher received "a lot of calls" and scheduled dates for KG after screening potential clients. (*Id.* at 378-80.) For some dates, Fisher drove KG to an agreed-upon location and waited in the car while KG met with the client (*Id.* at 318, 380.) For others, Fisher arranged for the client to meet KG in the family's apartment. (*Id.* at 319, 380.) KG engaged in sexual activity on at least two dates, both of which occurred in Vancouver, Washington. (*Id.* at 318-19.) In total, KG went on three or four dates and engaged in sexual activity with two or three clients. (*Id.* at 318.)

///

///

---

[3] Beaverton Police Detective Chad Opitz ("Opitz") connected Randall to locations in Southern California, Arizona, and New Mexico. (Resp't Ex. 103 at 178.)

PAGE 3 – FINDINGS AND RECOMMENDATION

On March 9, 2018, Opitz ("Opitz") saw one of KG's advertisements while monitoring Backpage.[4] (*Id.* at 88.) Opitz noticed the advertisement because KG looked "young," and the photo appeared to have been taken by a third party in "an actual residence." (*Id.* at 88-89.) After some investigation, Opitz connected the phone number listed in the advertisement with Fisher and KG. (*Id.* at 99-100.) Opitz then contacted the number in an "undercover capacity" and arranged to meet KG for a date on March 12. (*Id.* at 100-01.) Over several text messages, Opitz was told the price for "full service" (i.e., sexual intercourse), received additional photos of KG, and was given "piecemeal" information about where the date would occur. (*Id.* at 101-102, 113-14.)

On March 12, 2018, Opitz was given the address of an apartment complex and told to go to the clubhouse. (*Id.* at 101.) Upon arrival, he observed Fisher and Davies leave the complex and then received a text message instructing him to proceed to a specific apartment. (*Id.* at 101-02, 109.) Opitz approached the apartment with a uniformed patrol officer and eventually coaxed KG to answer the door. (*Id.* at 121.) Although KG was not immediately forthcoming about her activities, Opitz searched her cell phone and observed panicked text messages between KG and Fisher in the moments after he knocked on the door. (*Id.* at 122-24, 126-30.) KG eventually confirmed that she was the individual featured in the advertisements, and told Opitz that she believed Randall "was the person . . . arranging the dates . . . for her." (*Id.* at 125, 139.)

Opitz later obtained and searched Fisher's cell phone, which she had digitally wiped of data. (*Id.* at 144-45, 384.) With the help of Fisher's wireless carrier, Opitz recovered the deleted data and discovered multiple text messages between Fisher and Randall confirming Randall's

---

[4] Approximately one month after Opitz saw KG's advertisement, the Federal Bureau of Investigation seized Backpage and "all the data associated with that" website after confirming it was used for "prostitution involving children[.]" (Resp't Ex. 103 at 104-05.)

involvement. (*Id.* at 145-56.) Among other things, the text messages showed that Randall anticipated payment for his services and had given Fisher his bank account information. (*Id.* at 155-56, 166-67.) Fisher helped Opitz gather additional evidence by sending Randall a series of pretext text messages aiding the investigation. (*Id.* at 389-92.)

Law enforcement subsequently arrested Randall in El Paso, Texas, as he was returning from Mexico. (*Id.* at 180, 210.) Opitz interviewed Randall after his arrest, a recording of which was played for the trial court in its entirety. (*Id.* at 187-230.) During that interview, Randall confirmed his friendship with Fisher but denied posting any advertisements for KG. (*Id.* at 192-196.) When Opitz confronted Randall with the recovered text messages, Randall claimed ignorance with respect to KG's advertisements but claimed to have posted advertisements for Fisher.[5] (*Id.* at 196-211, 223-24.) Randall later admitted that he discussed with Fisher the possibility of posting advertisements for KG[6] but claimed that he offered to send the family money instead. (*Id.* at 211-218.) Randall also admitted that he provided Fisher his bank account information but claimed that he did not expect payment. (*Id.* at 215-16.)

### B.    Motions for Judgment of Acquittal

At the conclusion of the State's evidence, Randall moved for judgment of acquittal on all counts. (Resp't Ex. 103 at 437-44.) As relevant here, Randall asserted that the prosecution had failed to establish jurisdiction over him in Oregon because the evidence showed that he had posted the advertisements from a location outside of Oregon, and that the resulting prostitution had occurred in Washington. (*Id.* at 440-41.) The prosecutor argued in response that jurisdiction

---

[5] Opitz did not locate any advertisements for Fisher. (Resp't Ex. 103 at 231.)

[6] Randall explained that Fisher relied on him to post online advertisements because he had tried a "few times" to teach her how to do it but "it just didn't click." (*Id.* at 225.)

could lie in Oregon or Washington, and that Randall's crimes were chargeable in Oregon because KG, Fisher, and Opitz, who had viewed the advertisements, were in Oregon. (*Id.* at 445-46.) The trial court expressed doubts about Randall's jurisdictional arguments but recessed for the day further to consider the matter. (*Id.* at 448-55.)

The trial court reconvened the next day and allowed additional argument on Randall's motions. (*Id.* at 458-97.) The prosecutor clarified that "Oregon has jurisdiction if either one of the cause elements or result element of the crime occurs in the State of Oregon[,]" and argued that the evidence established jurisdiction under that standard. (*Id.* at 470.) The prosecutor explained:

> The cause of [KG] being sexually abused by these adult men for money originated with this defendant in Arizona or New Mexico, or wherever it was he was residing at the time.
>
> The result element of those offenses occurred here. All of the people who saw her posts online, including Detective Opitz, were up here in Orgon and in Washington County.
>
> She testified and Jill Fisher testified that she was doing both out-calls in the Portland and Washington area but also in-calls and planned dates in their apartment in Beaverton.
>
> The result element of attempting a prostitution act is clearly present in this case.

(*Id.* at 470-71.) The trial court then inquired about Randall's argument that the acts of prostitution had occurred in Washington, to which the prosecutor replied, "all [Randall] has to do is facilitate the commission of attempted prostitution by [KG]" in Oregon. (*Id.* at 472-73.) The prosecutor thus argued that the acts that occurred in Washington were immaterial. (*Id.*)

The trial court denied Randall's motions for judgment of acquittal, explaining, in relevant part:

> Of course, now, as we all know because of technology and people moving across state lines, and Washington being so close to where we are here in

Washington County, which is right next to Portland, Portland's right next to Vancouver, Washington, that we're dealing with state lines all the time.

Where is the most appropriate jurisdiction for this case? A lot of times it can be two or more places, given that scenario. And I believe that Oregon is the most proper jurisdiction, based on the fact that was already discussed on the record, that the acts of communicating and setting up the prostitution and even the actual, an attempt to prostitution at the very least occurred here in Oregon, be it mostly by the mother and her . . . boyfriend, who's since been convicted and sent to prison as far as to bringing in [Randall] and the allegation against him, again, the majority of all of this and these acts actually did occur here in Oregon.

(*Id.* at 500-01.)

The trial court ultimately found Randall guilty on all counts and sentenced him to a term of imprisonment totaling seventy months. (Resp't Ex. 101.)

## II.    DIRECT APPEAL

Randall filed a direct appeal, assigning as error the trial court's denial of his motions for judgment of acquittal. (Resp't Ex. 104 at 18.) In his counseled brief,[7] Randall argued that pursuant to Oregon Revised Statute ("ORS") § 131.215(1), jurisdiction for a crime lies in Oregon "if either the conduct or the result *that is an element of the offense* occurred in Oregon[,]" and that the State "did not meet either of those jurisdictional prerequisites with respect to the allegations of compelling or promoting prostitution against [Randall]." (Resp't Ex. 104 at 21.) Randall clarified that the compelling and promoting prostitution statutes—ORS §§ 167.017(1)(c) and ORS 167.012(1)(c), respectively—"contain *only* conduct elements[,]" and that there was no evidence showing that his conduct occurred in Oregon. (*Id.* at 22-23.) Randall thus argued that even though "actual acts of attempted prostitution may have occurred in Oregon (such as the creation of an ad that was visible to residents in Oregon)[,]" such acts (i.e., results) could not establish jurisdiction in Oregon. (*Id.* at 23-34.)

_____

[7] Randall also raised additional arguments in pro se supplemental briefs. (Resp't Exs. 105, 108.) Those arguments are not relevant to the instant proceedings.

The State argued in response that Randall had failed to preserve his appellate arguments, noting that when he moved for judgment of acquittal, Randall had "treated the victim's 'commission of prostitution or attempted prostitution' as a result element, . . . agreed that jurisdiction would be proper if any prostitution or attempted prostitution occurred in Oregon, and . . . argued only that the facts were insufficient to establish that any prostitution or attempted prostitution did occur in Oregon." (Resp't Ex. 106 at 11-12.) The State further argued that the trial court's ruling did not amount to plain error because the legislature would have understood both offenses to contain a result element, and those elements had occurred in Oregon (*Id.* at 19-20.) The State then argued that even if the compelling prostitution statute contained only a conduct element, that conduct occurred in Oregon, or at least it was "not obvious that the conduct occurred only outside Oregon[,]" because Randall could have been acting through an agent such as a website operating in Oregon. (*Id.* at 23-24.) Finally, the State argued that Randall had not presented to the trial court any jurisdictional argument directed at the promoting prostitution counts. (*Id.* at 22-23.)

The Oregon Court of Appeals affirmed without opinion (Resp't Ex. 111), and the Oregon Supreme Court denied review (Resp't Ex. 110). Randall did not seek postconviction relief.

## III.    FEDERAL HABEAS CORPUS

On December 5, 2023, Randall filed a petition for federal habeas corpus relief. (ECF No. 1.) In his second amended petition, Randall alleges three grounds for habeas relief:

**Ground One:**  The State of Oregon lacked jurisdiction to try the Petitioner.

Supporting FACTS:  Petitioner was never in Oregon at the times relevant to this case, nor did the state prove it had jurisdiction to prosecute at trial.

**Ground Two:**  State of Oregon raised a different legal or factual theory on appeal than the one it presented at trial.

Supporting FACTS:  In its response brief on direct appeal, the state included an assertion that "defendant used agents within Oregon to aid and facilitate . . .

prostitution or attempted acts of prostitution." The state did not raise this issue at trial, nor did it present any evidence supporting this new legal or factual theory.

**Ground Three:** State used unlawfully obtained evidence.

Supporting FACTS: Federal Grand Jury subpoenas used to compel production of information, which was then used to obtain a state grand jury indictment. The state also presented evidence used at trial [that] was obtained through an overbroad search warrant. Finally, evidence from a website was used which was unsourced.

(Second Am. Pet. at 4-5.) Respondent urges the Court to deny habeas relief because Ground One was decided in a state court decision that is entitled to deference, and Grounds Two and Three are not cognizable on habeas review and are otherwise procedurally defaulted. (Resp. Second Am. Pet. ("Resp't Resp.") at 7-15.)

## DISCUSSION

## I.    GROUNDS TWO AND THREE

In Grounds Two and Three, Randall alleges that the State "raised a different legal or factual theory" on appeal than presented at trial and "used unlawfully obtained evidence" to obtain an indictment. (Second Am. Pet. at 4-5.) Respondent argues that the Court should dismiss Grounds Two and Three for failure to state a claim because Randall fails to allege any violation of the United States Constitution or federal law. (Resp't Resp. at 7.) Respondent further argues that even if Grounds Two and Three are cognizable on federal habeas review, Randall failed fairly to present those grounds to the Oregon courts, and because he can no longer do so, they are procedurally defaulted. (*Id.* at 8-10.) Randall does not address Respondent's procedural arguments in his supporting brief or sur-reply.

### A.    Failure to State a Claim

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (simplified); *see also* 28 U.S.C. § 2254(a) (instructing that federal courts "shall

entertain an application for writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States"). Federal habeas relief is not available for alleged errors interpreting or applying state law. *See Estelle*, 502 U.S. at 67 (instructing that "it is not the province of a federal habeas court to reexamine state court determinations on state law questions" and reaffirming that "federal habeas corpus relief does not lie for errors of state law") (simplified); *see also Loftis v. Almager*, 704 F.3d 645 (9th Cir. 2012) (holding that "[i]t is axiomatic that habeas relief lies only for violations of the Constitution, laws, or treaties of the United States; errors of state law will not suffice"). "Thus, a habeas corpus petition must allege a deprivation of one or more federal rights to present a cognizable federal habeas corpus claim." *Iko v. NV Parole Bd.*, No. 3:26-cv-00022-ART-CSD, 2026 WL 145590, at *1 (D. Nev. Jan. 17, 2026) (citation omitted); *see also Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (explaining that "it is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts").

With respect to Ground Two, Randall does not identify in the petition a federal basis for relief, nor does he argue in his supporting brief that he is entitled to relief under any provision of federal law. Because Randall does not allege or otherwise argue that the State's responsive argument on direct appeal amounted to a violation of federal law, he fails to present a cognizable basis for habeas relief. *See Clayton v. Biter*, 868 F.3d 840, 845 (9th Cir. 2017) (explaining that a habeas claim is not cognizable "where the petitioner fails to allege a federal claim"). The Court thus recommends that the district judge dismiss Ground Two for failure to state a claim upon

which relief may be granted.[8] *See id.* (noting that "[d]istrict courts adjudicating habeas petitions under [Section] 2254 are instructed to summarily dismiss claims that are clearly not cognizable").

With respect to Ground Three, Randall identifies a federal basis for relief and clarifies the facts underlying his claim in his supporting brief. (*See* Pet'r's Br. Supp. Pet. ("Pet'r's Br.") at 25, ECF No. 61, arguing that the State "subvert[ed] [Randall]'s Fourth and Fourteenth Amendment rights" by failing to secure a search warrant and instead using "recycled" information obtained from federal grand jury subpoenas to indict him on state criminal charges). Liberally construed, *see Roy v. Lampert*, 465 F.3d 964, 970 (9th Cir. 2006) ("We must 'construe *pro se* habeas filings liberally.'") (citations omitted), and considering Randall's supporting arguments, Ground Three arguably states a claim for relief. However, for the reasons explained below, Ground Three is procedurally defaulted.

## B.    Procedural Default

A habeas petitioner generally must exhaust all remedies available in state court, either on direct appeal or through collateral proceedings, before a federal court may consider granting habeas relief. *See* 28 U.S.C. § 2254(b)(1)(A) (instructing that a court may not issue a writ of habeas corpus on behalf of an individual in state custody unless "the applicant has exhausted the remedies available in the courts of the State"); *see also Smith v. Baldwin*, 510 F.3d 1127, 1137 (9th Cir. 2007) (noting that a prisoner must first exhaust available remedies before a federal court may consider the merits of a habeas petition). Generally, a petitioner satisfies the exhaustion requirement "by fairly presenting the federal claim to the appropriate state courts . . . in the

---

[8] Even if Ground Two could be construed to state a viable claim for habeas relief, the Court agrees that it is procedurally defaulted.

manner required by the state courts, thereby 'afford[ing] the state courts a meaningful opportunity to consider allegations of legal error.'" *Casey v. Moore*, 386 F.3d 896, 915-16 (9th Cir. 2004) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986)) (alteration in original); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (holding that "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process").

If a petitioner failed to present his claims to the state courts in a procedural context in which the merits of the claims were actually considered, the claims have not been fairly presented to the state courts and therefore are ineligible for federal habeas corpus review. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In this respect, a petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule or failed to raise the claim at the state level at all. *Id.* at 451; *see also Coleman v. Thompson*, 501 U.S. 722, 750 (1991) ("We now recognize the important interest in finality served by state procedural rules, and the significant harm to the States that results from the failure of federal courts to respect them.") (citation omitted). An individual in state custody is barred from raising procedurally defaulted claims in federal court unless he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

In Ground Three, Petitioner alleges that the State improperly used information obtained through federal grand jury subpoenas rather than securing a search warrant. (Second Am. Pet. at

5.) Randall did not raise that claim before the Oregon courts and therefore failed fairly to present Ground Three. Because he can no longer do so, it is procedurally defaulted. *See* OR. REV. STAT. § 138.510(3) (setting forth a two-year limitation period in which to file for postconviction relief); OR. REV. STAT § 138.550(3) (instructing that all grounds for relief must be asserted in the original or amended postconviction relief petition unless the grounds could not reasonably have been raised). The Court thus recommends that the district judge deny habeas relief with respect to Ground Three.

## II.    GROUND ONE

In Ground One, Randall argues that the State "failed to prove jurisdiction to prosecute and try" him for compelling and promoting prostitution because "no evidence indicated that [his] conduct . . . occurred in Oregon." (Pet'r's Br. at 7-8.) Respondent argues that Randall again fails to identify a federal basis for relief, but that to the extent his claim can be construed as a challenge to the sufficiency of the evidence, the state-court decision denying Ground One is entitled to deference. (Resp't Resp. at 13-15.) Randall does not address Respondent's arguments in his supporting brief and instead renews the arguments he advanced on direct appeal.[9] (*See* Pet'r's Br. at 6-22.)

///

---

[9] In his sur-reply, Randall states in passing that the trial court's denial of his motion for judgment of acquittal "demonstrates an unreasonable application of Supreme Court precedent" in *Platt v. Minn. Min. & Mfg. Co.*, 376 U.S. 240 (1964), *United States v. Cores*, 356 U.S. 405 (1958), *Johnston v. United States*, 351 U.S. 215 (1956), and *United States v. Cabrales*, 524 U.S. 1 (1998). Those cases concern proper venue for federal offenses and are inapplicable to Randall's claim. *See Platt*, 376 U.S. at 241 (mandamus action considering transfer of antitrust action to another district than the one in which it was filed); *Cores*, 356 U.S. at 405 (appeal from dismissal of information for federal immigration offense due to lack of venue); *Johnston*, 351 U.S. at 215 (appeal from dismissal of indictments for violations of the Universal Military Training and Service Act due to lack of venue); *Cabrales*, 524 U.S. at 3 (appeal from dismissal of indictment for federal money laundering charges due to lack of venue).

To the extent Ground One amounts to a per se challenge to the trial court's jurisdiction, that claim rests solely on state law and is not cognizable on federal habeas review. *See Ramirez v. Koenig*, No. EDCV 20-1348 RSWL (PVC), 2020 WL 6435393, at *5 (C.D. Cal. Sept. 18, 2020) (noting that "[i]t is widely accepted that a claim alleging that a trial court lacked jurisdiction due to purported violations of state law is not cognizable on federal habeas review"), *findings and recommendation adopted*, 2020 WL 6395475 (C.D. Cal. Nov. 2, 2020); *see also Hernandez v. Ylst*, 930 F.2d 714, 719 (9th Cir. 1991) (noting, without deciding, that "[w]e are not persuaded that a constitutional violation necessarily occurs when the convicting court acts without jurisdiction purely as a matter of state law"); *Wright v. Angelone*, 151 F.3d 151, 157-59 (4th Cir. 1998) (rejecting the petitioner's claim that the trial court lacked subject matter jurisdiction over certain criminal charges because "when pared down to its core," that claim "rests solely upon an interpretation of Virginia's case law and statutes" and is "simply not cognizable on federal habeas review"), *cert. denied*, 514 U.S. 1085 (1995); *Poe v. Caspari*, 39 F.3d 204, 207 (8th Cir. 1994) (explaining that "[j]urisdiction is no exception to the general rule that federal courts will not engage in collateral review of state court decisions based on state law").

However, to the extent Randall's renewed appellate arguments amount to a sufficiency of the evidence challenge, such claim adequately alleges a violation of *Jackson v. Virginia*, 443 U.S. 307, 317 (1979) (holding that the relevant inquiry for reviewing a sufficiency of the evidence challenge "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"). For the reasons explained below, the state-court decision denying relief on Ground One is entitled to deference.

A. **Legal Standards**

1. **Deference to State-Court Decisions**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") prohibits relitigation of any claim adjudicated on the merits in state court unless such adjudication resulted in a decision that was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

A state-court decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" of clearly established federal law occurs if the state court correctly identifies the governing legal principle but misapplies that principle to the facts at hand. *See id.* at 407 (holding that "a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case"). The "unreasonable application" clause requires the state court's decision to be more than merely erroneous or incorrect. *See id.* at 411 (noting that "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly"). Rather, the state court's application of clearly established federal law must be objectively unreasonable. *See id.* at 409 (instructing that a federal habeas court making the 'unreasonable application' inquiry

should ask whether the state court's application of clearly established federal law was objectively unreasonable").

"Clearly established Federal law" under the AEDPA "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412; *see also Thaler v. Haynes*, 559 U.S. 43, 47 (2010) (noting that "[a] legal principle is 'clearly established' within the meaning of [28 U.S.C. § 2254(d)(1)] only when it is embodied in a holding of [the Supreme] Court"). To be "clearly established," Supreme Court precedent must "squarely address[] the issue in the case before the state court, or establish[] a legal principle that 'clearly extends' to the case before the state court." *Andrews v. Davis*, 798 F.3d 759, 773 (9th Cir. 2015) (simplified). If no "clearly established Federal law" governs the issue at bar, the federal habeas court "must defer to the state court's decision." *Moses v. Payne*, 555 F.3d 742, 754 (9th Cir. 2009).

"Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). Where a state court issues a decision without explanation, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* Where, however, the highest state court issues a decision on the merits unaccompanied by its reasons for the decision, a federal habeas court must "look through" to the last reasoned decision issued in a lower state court, and presume the unexplained decision adopted the same reasoning. *Wilson v. Sellers*, 584 U.S. 122, 125 (2018).

If these standards seem "difficult to meet," it is because they are "meant to be." *Harrington*, 562 U.S. at 102. By design, the AEDPA imposes "a difficult to meet and highly

deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (simplified); *see also White v. Wheeler*, 577 U.S. 73, 76-77 (2015) (acknowledging that "AEDPA, by setting forth necessary predicates before a state-court judgment may be set aside, erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court") (simplified). The AEDPA thus "prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of the state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). "The petitioner carries the burden of proof." *Pinholster*, 563 U.S. at 181.

### 2. Sufficiency of Evidence Claims

In considering a challenge to the sufficiency of the evidence, the relevant inquiry for the reviewing court "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 317. This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.*; *see also Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (per curiam) (explaining that "the only question under *Jackson* is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality"). A reviewing court "faced with a record of historical facts that supports conflicting inferences [therefore] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to the resolution." *Jackson*, 443 U.S. at 326.

///

The Supreme Court has made clear that sufficiency of the evidence claims under *Jackson* "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Johnson*, 566 U.S. at 651. Indeed, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court." *Id.* A federal habeas court may overturn a state-court decision rejecting a sufficiency of the evidence claim only if that decision was "objectively unreasonable." *Id.* (simplified).

**B.    Analysis**

Liberally construed, Randall argues in Ground One that the evidence presented at trial was insufficient to prove that there existed jurisdiction to prosecute him in Oregon. (Pet'r's Br. at 7.) Specifically, Randall argues, as he did on appeal, that the compelling and promoting prostitution statutes contain only conduct and circumstances elements, and that the State failed to elicit evidence sufficient to establish that his conduct occurred in Oregon. (*Id.* at 10-22.)

Oregon law circumscribes jurisdiction with respect to the relevant crimes, as follows:

[A] person is subject to prosecution under the laws of this state for an offense that the person commits by the conduct of the person or the conduct of another for which the person is criminally liable if:

(1) Either the conduct that is the element of the offense or the result that is an element occurs within this state[.]

OR. REV. STAT. § 131.215(1). Randall was charged with compelling prostitution pursuant to ORS § 167.017(1)(c), which provides that a person commits the crime of compelling prostitution if he knowingly "[a]ids or facilitates the commission of prostitution or attempted prostitution by a person under 18 years of age[.]"[10]

---

[10] Randall was also charged with promoting prostitution pursuant to ORS § 167.012(1)(c), which provides that a person commits the crime of promoting prostitution if, with intent to promote prostitution, he "[r]eceives or agrees to receive money . . . pursuant to an agreement or

Looking through to the last reasoned decision on the matter,[11] the trial court concluded that jurisdiction was proper in Oregon because the evidence showed that the results of Randall's actions occurred in Oregon. (Resp't Ex. 103 at 500-01.) That conclusion is reasonable given the evidence before the trial court, which showed that Fisher and KG operated out of the family's Beaverton apartment, coordinated with Randall to create and post the advertisements, fielded calls in response to those advertisements, and arranged to meet with potential clients, including Opitz, within Oregon. (Resp't Ex. 103 at 303-20, 363-92.) Indeed, as Respondent points out, Opitz's sting operation provided more than enough evidence of attempted prostitution to establish jurisdiction in Oregon. (*Id.* at 88-139.)

Randall nevertheless argues, as he did on direct appeal, that the compelling and promoting prostitution statutes contain only conduct elements, and that the State failed to elicit evidence showing that any of his conduct occurred in Oregon. (Pet'r's Br. at 10-22.) However, the trial court tacitly determined that the compelling and promoting prostitution statutes contain

---

understanding that the money . . . is derived from prostitution activity." OR. REV. STAT. § 167.012(1)(c). Although Randall clarified before the trial court that he intended to make a jurisdictional argument on all counts (Resp't Ex. 103 at 440), he directed his arguments toward the compelling prostitution counts and did not explain why there was insufficient evidence with respect to the promoting prostitution counts.

[11] Randall argues at length in his sur-reply that his jurisdictional challenge is entitled to de novo review. (Pet'r's Rebuttal Resp't Reply at 1-6, ECF No. 68.) Randall's reliance on caselaw interpreting federal subject matter jurisdiction is misplaced, however, and his arguments reveal a critical misunderstanding of collateral review pursuant to Section 2254. As explained above, the AEDPA imposes a mandatory framework by which federal courts must evaluate state-court decisions and burdens the petitioner with establishing that the state court "managed to blunder so badly that every fairminded jurist would disagree." *Mays v. Hines*, 592 U.S. 385, 392 (2021) (per curiam). Despite Randall's assertions to the contrary, the Court must look through to the last reasoned decision on the matter and evaluate that decision through the AEDPA's deferential lens. *See Wilson*, 584 U.S. at 125 (federal courts should "look through" an unexplained decision to the last state-court decision providing a rationale and then "presume that the unexplained decision adopted the same reasoning"). Randall's insistence that he is entitled to de novo review is without merit.

result elements when it concluded that jurisdiction was proper in Oregon because the result of Randall's conduct—KG's attempted prostitution—occurred in Oregon. The Oregon appellate courts are presumed to have come to the same conclusion, *see Wilson*, 584 U.S. at 125, and this Court is bound by that construction. *See Woods v. Sinclair*, 764 F3d 1109, 1138-39 (9th Cir. 2014) (noting that a federal habeas court must defer to a state court's ruling if it is based on state law); *see also Mendez v. Small*, 298 F.3d 1154, 1158 (9th Cir. 2002) (acknowledging that "[s]tate courts are the ultimate expositors of state law, and [federal habeas courts are] bound by the state's construction" on state law matters).

On this record, the Court cannot conclude that the trial court's determination that jurisdiction was proper in Oregon was contrary to, or an unreasonable application of, federal law. Because Randall has failed to establish that the ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement[,]" *Harrington*, 562 U.S. at 103, it is entitled to deference. The Court therefore recommends that the district judge deny habeas relief with respect to Ground One.

## CONCLUSION

For the reasons stated, the Court recommends that the district judge DENY the Second Amended Petition for Writ of Habeas Corpus (ECF No. 14), deny any pending motions as moot, and deny a certificate of appealability.

## SCHEDULING ORDER

The Court will refer its Findings and Recommendation to a district judge. Objections, if any, are due within fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due within fourteen (14) days after being served with a copy of

the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 27th day of January, 2026.

HON. STACIE F. BECKERMAN
United States Magistrate Judge